UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TOSMARE SHIPYARD JSC/ AS TOSMARES
KUGUBUVETAVA,

                                    Plaintiff,              09 CV

-v-
                                                    **VERIFIED COMPLAINT**

                                                    09  CV  7894  (BSJ)
FOX SHIPPING LTD.,

                                    Defendant.
------------------------------------------------------------------x

    Plaintiff TOSMARE SHIPYARD JSC (hereinafter "TOSMARE") by its

attorneys, CHALOS & CO, P.C., as and for its Verified Complaint against Defendant,

FOX SHIPPING LTD. (hereinafter "FOX"), alleges upon information and belief as

follows:

## JURISDICTION

    1.    The Court has subject matter jurisdiction by virtue that the underlying

claim herein is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and within the admiralty and maritime jurisdiction of

this Court under 28 U.S.C. § 1333.

## THE PARTIES

    2.    At all times material hereto, Plaintiff, TOSMARE was and still is a foreign

business entity.

    3.    At all times material hereto Defendant, FOX was and still is a foreign

business entity duly organized and existing pursuant to the laws of Latvia, with a

principal place of business at Prusu Street 46-15, Riga, LV-1057, Latvia.

<u>FACTS AND CLAIM</u>

4.      On or about July 17, 2008, FOX, as owner of the M/V MOON FOX, entered into a contract with Plaintiff TOSMARE, for repairs to the vessel in accordance with the terms and conditions of contract No. 8013.  *See copy of contract No. 8013, attached hereto as Exhibit 1.*

5.      This contract is a maritime contract.

6.      Pursuant to the terms of the contract and in accordance with the specifications accepted by the parties, the total cost of the repair for the vessel was € 389,600.00.

7.      The M/V MOON FOX was delivered on or about July 22, 2008 to the port of Liepaya for the scheduled repairs.  Thereafter, Plaintiff TOSMARE performed and completed the repair works in accordance with the terms and conditions of the contract.

8.      On September 25, 2008, with the acceptance of the vessel by her owners, TOSMARE issued its final invoice in respect of the repairs completed under the contract in the total amount of € 389,600.00 which was accepted with the signature of FOX's representative, Technical Director Mr. V. Marmishev.  *See copy of the accepted Invoice No. 514 attached hereto as Exhibit 2.*

9.      Despite full performance by Plaintiff and Defendant's acceptance of the final invoice, Defendant FOX has a balance of € 99,600.00 which remains outstanding.

10.     Furthermore, clause 8.1 of the contract stated that forfeit for late payment will be due on any overdue amount at the rate of 0.1% per day, for every day of delay.

11.    In breach of the terms and conditions of the contract, and the undertaking shown on the face of the invoice, Defendant FOX has refused, neglected and/or otherwise failed to pay any of the outstanding balance of € 99,600.00 (USD $ 145,213.39[1]) which is properly due and owing to Plaintiff TOSMARE.

12.    Pursuant to the terms of the contract, all disputes arising thereunder are to be submitted to arbitration in Germany in accordance with the statutes, regulations and rules of the German Maritime Arbitrators Association ("GMAA") and according to German Law.

13.    Accordingly, and in order to enforce its claim against the Defendant, Plaintiff will commenced arbitration in Germany before a tribunal of three arbitrators as provided under clause 11.1 of the contract.

14.    This action is brought in order to obtain jurisdiction over Defendant and also to obtain security for Plaintiff's claims and in aid of the GMAA proceedings.

15.    Pursuant to the German Civil Code, interest is to be calculated and due in the amount of eight (8) percentage points above the respective applicable basic rate of interest. (*See* German Civil Code[2] § 291 and § 288 ¶ 2).  The current Basic Rate of Interest is 0.12%.  *See copy of Basic Rate of Interest press release from Deutsche Bundesbank attached hereto as Exhibit 3.*

16.    Pursuant to Pt 3, Chapter 2, Items no. 3200 and 3202 of Schedule 1 of the German Law on the Remuneration of Lawyers (*Rechtsanwaltsvergutungsgesetz*) attorneys' fees are limited to 2.5% of the amount awarded.  As best as can be currently

---

[1] Exchange rate of € 1.00 = $ 1.458, accessed at www.xe.com on September 11, 2009
[2] The English Translation of the German Civil Code can be accessed at http://www.gesetze-im-internet.de/englisch_bgb/index.html

estimated, attorneys fees may be awarded in accordance with German Law in an amount of USD $ 3,630.33.

17.    The rules of the GMAA (Rule § 7) provide that a prevailing party may be awarded by the arbitral tribunal costs in the form of the arbitrators' fees. *See copy of the Rules of the German Maritime Arbitrators Association attached hereto as Exhibit 4.* The amount of the arbitrator fees is scaled and set, under the GMAA Remuneration Rules, in proportion to the amount of the claim. *See copy of the GMAA - Rules on Remuneration, attached hereto as Exhibit 5.*

18.    As best as can now be estimated, Plaintiff, TOSMARE expects to recover the following amounts in the Arbitration in Germany from Defendant FOX:

| | | |
|---|---|---|
| A. | Principal claim: | $ 145,213.39 |
| B. | Estimated interest on Principal claim:<br>3 years at 8.12%, compounded annually | $ 39,603.35 |
| C. | Estimated attorney's fees: | $ 3,630.33 |
| D. | Estimated arbitration costs[3]: | $ 14,871.60 |
| | **Total Claim** | **$ 203,318.67** |

19.    Therefore, TOSMARE's total claim for breach of the maritime contract against Defendant FOX is in the aggregate US $ **203,318.67**.

<u>BASIS FOR ATTACHMENT</u>

20.    Defendant, FOX cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendants are believed to have or will have during the pendency of this action, certain assets, accounts, freights, monies, charter hire,

---

[3] ( € 3,400 x  $ 1.458) x 3[arbitrators] = $14,871.60

credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to, claimed by, or for the benefit of, the Defendant within this District held by various parties, as garnishees, including by not limited to electronic fund transfers.

21.    Defendant is continuously engaged in international shipping and conducts business in U.S. Dollars. Nearly all companies engaged in the international shipping industry transact business in U.S. Dollars and therefore regularly have assets in New York City. Dollars are the *lingua franca* of international commerce.

22.    All international U.S. dollar transfers are processed by intermediary banks in the United States, mainly in New York City. The Clearing House Interbank Payment System represents that it processes 95% of those transfers.

23.    Plaintiff believes that some of these assets of Defendant, to wit: accounts; bank accounts; monies; charter hire; credits; debts owed to the defendants; effects; payments for bunkers, cargo, goods or services; debts; unmatured debts; bills of lading; payments from the purchasers of cargoes; freight and/or hire payments to or from owners of vessels, or charterers, to, from, or for the benefit of, Defendant and/or Clearing House Interbank Payment System (CHIPS) credits or funds being transferred through intermediary banks, are located in this District in the possession of garnishees, including: ABN AMRO BANK, Bank of America, Bank of China, Bank of New York, Bank of Tokyo Mitsubishi UFJ Ltd., Barclay's Bank, BNP Paribas SA, Calyon, Calyon Financial, Inc., Citibank N/A, Credit Suisse Securities (USA) LLC, Deutsche Bank, HSBC (USA), JPMorgan Chase Bank, Mashreqbank, Societe Generale, Standard Chartered Bank, UBS AG, U.S. Bank, Wachovia Bank, and Wells Fargo Bank.

WHEREFORE, Plaintiff prays:

A.      That process in due form of law issue against the Defendant, citing Defendant to appear and answer under oath all, and singular, the matters alleged in the Verified Complaint;

B.      That since the Defendant cannot be found within the District, as set forth in the Declaration of George M. Chalos (*attached hereto as Exhibit 6*), and pursuant to Rule B and Rule E of the Supplemental Rules of Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B and Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of the Defendant's tangible or intangible property or any other funds held by any garnishees in the district which are due and owing, or other property of, or for the benefit of, the Defendant, up to the amount of USD $ **203,318.67** to secure and satisfy the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B and Rule E answer the matters alleged in the Complaint;

C.      That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: Oyster Bay, New York
       September 14, 2009

                          CHALOS & CO, P.C.
                          Attorneys for Plaintiff
                          TOSMARE SHIPYARD JSC/ AS
                          TOSMARES KUGUBUVETAVA

                   By:    _____
                          George M. Chalos (GC-8693)
                          123 South Street
                          Oyster Bay, New York 11771
                          Tel: (516) 714-4300
                          Fax: (516) 750-9051
                          Email: gmc@chaloslaw.com

EXHIBIT 1

КОНТРАКТ № 8013

г. Лиепая, Латвия                                           "17" июля 2008 года

SIA «Fox Shipping Ltd.», именуемая в дальнейшем Заказчик, в лице директора компании г-на Я.Дуцманиса, и A/S «Tosmares kuģubūvētava», именуемая в дальнейшем Исполнитель, в лице Коммерческого директора судоверфи г-на Б.Галковича, действующего на основании Устава, заключили настоящий контракт о нижеследующем (Заказчик и Исполнитель далее в тексте совместно именуются — Стороны):

## 1. ПРЕДМЕТ КОНТРАКТА

1.1. Заказчик поручает, а Исполнитель принимает на себя обязательства по производству ремонта т/х "Moon Fox", IMO номер № 7366037, флаг – Латвия, работает на международных линиях (далее по тексту – Судно), в порту Лиепая на Тосмарской Судоверфи на основании утвержденной Заказчиком ремонтной ведомости.

## 2. СТОИМОСТЬ РЕМОНТА

2.1. Стоимость ремонта судна согласно предварительному обсчету заявочной ремонтной ведомости составляет EUR 330.437,00 (триста тридцать тысяч четыреста тридцать семь Евро, 00 центов) /предварительная ведомость расценки работ прилагается к контракту и является его неотъемлемой частью/.

2.2. Заказчик оставляет за собой право по контролю за ценами на поставляемые Исполнителем изделия, СЗЧ, материалы и т.д.

2.3. Дополнительные ремонтные работы, а также работы, необходимость проведения которых установлена в результате докового освидетельствования, дефектации и по требованию классификационного общества, должны быть письменно согласованы с Заказчиком и расценены дополнительно согласно тарифам судоверфи, но не выше цен основной ремонтной ведомости.

2.4. В случае изменения объема работ по указанным причинам или по инициативе Заказчика в размере более 10% от контрактной стоимости соответственно, срок ремонта может быть изменен, о чем Сторонами составляется дополнительное соглашение как приложение к настоящему Контракту, и согласовывается окончательная стоимость ремонта.

2.5. В стоимость ремонта Судна включаются также расходы по получению экспортных и иных лицензий, а также расходы Исполнителя, связанные с выдачей Заказчику сертификатов, чертежей, схем, анализов и руководств по обслуживанию вновь установленного Исполнителем оборудования.

## 3. СРОК РЕМОНТА

3.1. Срок ремонта устанавливается 35 (тридцать пять) календарных дней, включая 20 (двадцать) суток в сухом доке, благоприятных для выполнения работ по погодным условиям, без учета национальных праздничных дней Латвии.
Начало ремонта устанавливается актом приемки судна в ремонт, ориентировочная дата начала ремонта – 21 июля 2008 г.

## 4. РАСЧЕТЫ СТОРОН

4.1. Оплату выполненных работ Исполнителя Заказчик производит в следующем порядке и размерах:

- **40%** - от контрактной стоимости ремонта оплачиваются до отхода Судна от причала Исполнителя по окончанию ремонта;
- **60%** - остаток /разница между фактической стоимостью ремонта и первым платежем/ оплачиваются равными частями (по 30%) в течении 30 и 60 суток после окончания ремонта.

Платежи, указанные в этой статье, Заказчик обязуется осуществлять в согласованные Сторонами сроки независимо от любых споров, претензий, исков, которые у него могут возникнуть к Исполнителю. Такие споры, претензии, иски в любом случае должны быть предметом отдельного разбирательства.

## 5. ОРГАНИЗАЦИЯ РЕМОНТА СУДНА

2

5.1. Заказчик обеспечивает поставку СЗЧ и других покупных изделий согласно согласованному графику. В случае задержки Заказчиком поставок СЗЧ, Исполнитель оставляет за собой право переноса срока окончания ремонта составлением дополнительного соглашения.

5.2. Для оперативного решения технических вопросов, наблюдения и контроля за ходом и качеством ремонта, а также для организации проводимых работ, Заказчик поручает своему представителю, полномочия которого определяются отдельно выданной доверенностью:

    a) обеспечивать техническую подготовку механизмов, устройств и судна в целом к проведению ремонтных работ;

    b) проводить наблюдение за ходом ремонта и проводить приемку работ;

    c) производить согласование объемов и методов ремонта механизмов, устройств и конструкций в процессе дефектации.

Заявки на дополнительные работы, акты сдачи и приема Судна от Исполнителя, инвойсы и другие документы, выписанные Исполнителем и влекущие финансовые обязательства Заказчика, от имени Заказчика уполномочивается подписывать В.Мармышев - технический суперинтендант судна, копия паспорта которого прикладывается.

5.3. При возникновении разногласий между Исполнителем и Заказчиком по техническим вопросам, эти разногласия разрешаются представителями Классификационного общества или независимого сюрвейера.

5.4. Исполнитель проводит швартовные и ходовые испытания механизмов, устройств и конструкций совместно с представителями Заказчика и Классификационного общества по согласованной программе.

5.5. Если в процессе испытаний будут выявлены дефекты из-за некачественного выполнения ремонтных работ или применения некачественных, или несоответствующих материалов, то Исполнитель обязан без дополнительной оплаты и продления срока ремонта устранить эти дефекты.

5.6. Заказчик обеспечивает оперативную подготовку механизмов, устройств и помещений к ремонту, исключая задержку ремонтных работ, при необходимости, обеспечивает возможность проведения Исполнителем испытаний круглосуточно. О проведении работ в третью смену Исполнитель должен поставить Заказчика в известность не менее чем за 1 сутки до их начала.

5.7. Исполнитель обязуется производить уборку рабочих мест по окончании работ.

5.9. Ремонт судна производится по правилам и под надзором инспекторов Классификационного общества.

5.10. Дополнительные работы выполняются Исполнителем после подтверждения Заказчиком необходимости их выполнения на согласованных сторонами условиях согласно п.2 настоящего контракта.

5.11. Ремонт производится у причала и в доке АО «Тосмарская судоверфь» г. Лиепая.

5.12. Исполнитель гарантирует, что он имеет все необходимые запасные части, инструмент и материалы в наличии для завершения ремонтных работ в оговоренные настоящим Контрактом сроки.

Право собственности на поставленные Исполнителем Судну запасные части, материалы, оборудование переходит к Заказчику только после их полной оплаты Исполнителю. До их оплаты такие запасные части, материалы, оборудование считаются находящимися в аренде у Заказчика. Запасные части, материалы, оборудование поставляются на безпроцентный кредит Судну.

Заказчик, если он не является собственником Судна, гарантирует Исполнителю, что он уполномочен собственником Судна на прием запасных частей, материалов, оборудования на безпроцентный кредит Судну.

## 6. ДОКУМЕНТЫ

6.1 Исполнитель и Заказчик в период и по окончании ремонта обмениваются и предоставляют другой стороне следующие документы:

    a) Акт приемки судна в ремонт;

    b) Акт приемки судна из ремонта (технический акт);

    c) Акт согласования стоимости ремонта (финансовый акт или инвойс);

    d) Исполнительную ведомость расценок работ;

    e) Счета-фактуры или инвойсы.



2

3

Кроме того, до принятия Судна в ремонт Исполнителем, Заказчик обязуется предоставить последнему:
- a) Заверенную печатью компании-собственника Судна и подписью уполномоченного лица копию сертификата о праве собственности на Судно.
- b) Копии документов, подтверждающих право подписания настоящего Контракта конкретным лицом от имени и по поручению Заказчика, а именно:
  - Регистрационного удостоверения Коммерческого Регистра.
  - Устава фирмы.
  - Справки Коммерческого Регистра о лицах, имеющих право подписи в SIA.
- c) В случае непредоставления Заказчиком любого из указанных в настоящей статье документов Исполнитель имеет право удерживать Судно за счет Заказчика до предоставления таковых.

## 7. ОТВЕТСТВЕННОСТЬ СТОРОН

7.1. Исполнитель несет ответственность за полноту и качество         выполненных работ и соответствие примененных материалов техническим условиям, чертежам и стандартам.

7.2. Исполнитель дает гарантию на выполненную работу по ремонту  судна на 6 месяцев, а на материалы и поставляемое Исполнителем оборудование – 12 месяцев календарного времени со дня окончания ремонта судна.

7.3. В гарантийный период Исполнитель несет ответственность за дефекты, возникшие по причине несоблюдения технических условий, некачественного выполнения работ или применения некачественных материалов. В случае обнаружения дефекта в гарантийный период, Заказчик обязан информировать Исполнителя об этом в течение 3-х дней после обнаружения дефекта. Исполнитель в случае подтверждения возникновения дефектов по его небрежности или вине, обязан за свой счет и в согласованные с заказчиком сроки выполнить необходимый ремонт или оплатить издержки Заказчика за выполнение ремонта другой стороной в пределах исполнительной стоимости этих работ. В этом случае оплачиваются только прямые издержки Заказчика, относящиеся непосредственно к выполнению ремонтных работ.

7.4. Исполнитель передает на судно акты испытаний, замеров, карты дефектации, растяжку наружной обшивки с указанием районов замены, подварки сварных швов и сертификаты на материалы ответственных деталей.

7.5. Исполнитель несет ответственность только за безопасное проведение ремонтных работ в течение всего ремонтного периода. За действия экипажа судна Исполнитель ответственности не несет. Контроль за безопасностью при проведении огневых работ осуществляется силами экипажа судна или судоверфи по согласованию сторон. Исполнитель несет ответственность за сохранность демонтированного с судна оборудования и его повреждение в период ремонта.

7.6. Заказчик может привлекать к выполнению ремонтных работ сторонние организации без согласия Исполнителя. Вместе с тем Исполнитель оказывает всемерную помощь Заказчику при выполнении ремонтных работ экипажем судна.
Если Заказчик, поставив в известность Исполнителя, привлекает к выполнению отдельных ремонтных работ сторонние организации, то он обязан оплатить Исполнителю затраты, связанные с содержанием причалов, доков, использования инфраструктуры Исполнителя и др. издержки. Размер оплаты оговаривается в каждом конкретном случае с учетом состава и характера выполненных работ и оказанных услуг.
Работы выполняемые экипажем судна или сторонними организациями не должны влиять на ход работ, выполняемых верфью.

## 8. ШТРАФЫ

8.1. За просрочку любого платежа, указанного в статье 4.1 настоящего Контракта, Заказчик обязуется уплатить Исполнителю неустойку в размере 0,1 процента за каждый просроченный согласно условий статьи 4.1 день платежа. При этом из оплачиваемой после просрочки любого платежа суммы в первую очередь погашаются все вытекающие из условий Контракта неустойки, а оставшаяся сумма используется для погашения основного долга.

8.2. За задержку Судна в ремонте по вине Исполнителя последний по требованию Заказчика, уплачивает Заказчику штраф в размере EUR 4,000,00 (четыре тысячи евро) за каждые сутки задержки, начиная с третьего дня задержки судна, но не более 10% от окончательной стоимости ремонта Судна, зафиксированной в финальном инвойсе Исполнителя.

## 9. ОТВЕТСТВЕННОСТЬ

9.1. Заказчик, судовладелец, менеджеры, агенты и любые другие третьи лица, имеющие или могущие иметь отношение к Судну, совместно и каждый из них отдельно несут

4

ответственность перед Исполнителем за своевременность и полноту оплаты инвойсов Исполнителя.

9.2. Заказчик, если он не является собственником Судна, обязуется известить собственника Судна об условиях статей 4.1., 5.12., 6.1., 9.1., 9.3. настоящего Контракта. Исполнитель не обязан удостоверяться, исполнил ли Заказчик обязательство, указанное в настоящем пункте Контракта.

9.3. В случае смены собственника Судна во время его нахождения на ремонте у Исполнителя, Заказчик обязуется в течение 24 часов с момента оформления смены собственника известить об этом Исполнителя, а в течение 48 часов предоставить Исполнителю документ, подтверждающий то, что новый собственник Судна принял на себя обязательства перед Заказчиком и Исполнителем по настоящему Контракту.

## 10. ФОРС-МАЖОР

10.1.Непредвиденные обстоятельства, имеющие характер непреодолимой силы, например наводнение, землетрясение и другие стихийные бедствия, которые находятся вне контроля Исполнителя, и при которых прекращаются все работы, как в цехах, так и на судне, могут давать право Исполнителю соответственно увеличить срок ремонтных работ на судне при условии, что обстоятельства оказывают значительное влияние на окончание срока договора и при условии, что Исполнитель сообщил Заказчику в письменной форме о форс-мажорных обстоятельствах не позднее 24-х часов с момента их наступления.

Форс-мажорными обстоятельствами считаются также ураганные и штормовые ветра, дожди, высокая влажность — те обстоятельства, которые резко ограничивают или исключают возможность проведения на судне пескоструйных и малярных работ.

Отсутствие своевременного предупреждения о форс-мажорне лишает Исполнителя права предъявлять претензии по таким вопросам.

Исполнитель также обязан информировать Заказчика в письменной форме в течение 24-х часов о прекращении форс-мажорного состояния.

Документ, выданный соответствующим компетентным органом, является достаточным для подтверждения действий непреодолимой силы.

## 11. АРБИТРАЖ

11.1.Любые споры, разногласия, претензии или иски, которые могут возникнуть или возникли из настоящего Контракта, или связанные с условиями его расторжения, прекращения или объявления недействительным, будут рассматриваться немецкой Ассоциацией морских арбитров (GMAA) в соответствие с ее Уставом, Регламентом, Правилами на основе права Германии.

Количество арбитров – три.

Язык арбитража – английский.

## 12. АДРЕСА СТОРОН.

**ИСПОЛНИТЕЛЬ**    **A/S «Tosmares kuģubūvētava»**
Reģ. Nr. LV 42103022837
Ģenerāļa Baloža iela 42/44
Liepāja, LV-3414, Latvija

**ЗАКАЗЧИК :**    **«Fox Shipping Ltd.»**
Reg.Nr.: 40003637655
Prusu iela 46-15,
Rīga, LV 1057, Latvija

**ИСПОЛНИТЕЛЬ:**
Коммерческий директор
**A/S «Tosmares kuģubūvētava»**

**ЗАКАЗЧИК:**
Директор
**«Fox Shipping Ltd.»**

Б.Галкович

Я.Дуцманис

EXHIBIT 2

## TOSMARES KUĢU BŪVĒTAVA            TOSMARE SHIPYARD

TO:    SIA «Fox Shipping Ltd»
       Reg.Nr: 40003637655                                      *Date: 25.09.2008.*
       Prusu Street 46-15,
       Riga, LV-1057
       LATVIA

FM:    AS «Tosmare Shipyard»
       VAT No.: LV42103022837

RE:    m/v «Moon Fox»
       IMO No. 7366037                              **Yard's Order № 8013**

### INVOICE No. 514

For the repair on the board of m/v «Moon Fox» (P.O.R. – Basseterre, flag – St Kitts & Nevis, trading on international lines) from 22.07.2008 till 25.09.2008 according to the Contract №8013 dated 17.07.2008.
All the works are carried out to the full satisfaction of the Owner's Representative.

Total price of repair:
VAT=0% (item 7, part 1, paragraph 4a)                 EUR   389.600,00
**TOTAL TO BE PAID**                                  **EUR   389.600,00 NET**
                         *(Say:  three hundred eighty-nine thousand six hundred EUR)*

1st installment (40%) to be paid before  25.09.08      EUR   140.000,00
2nd installment (20%) to be paid  before 25.10.08      EUR    83.200,00
3rd installment (20%) to be paid before 25.11.08       EUR    83.200,00
4th installment (20%) to be paid before  25.12.08      EUR    83.200,00

All installments to be paid to the following bank account:
**BENEFICIARY BANK**
Bank name:          LATVIJAS UNIBANKA, Liepaja Branch
SWIFT code:         UNLALV2X
IBAN No.:           LV83UNLA0012102071518
In favour of:       TOSMARE SHIPYARD /A/S Tosmares Kugubuvetava/
Yard's address:     Generala Baloza 42/44, Liepaja, LV-3402, LATVIA

On behalf of                              On behalf of
SIA «Fox Shipping Ltd»:                   «Tosmare Shipyard»:

_____ Mr. V.Marmishev               _____ Mr.B.Galkovich
Technical Superintendent                  Commercial Director

EXHIBIT 3



**Press release**

Frankfurt am Main<br>30 June 2009

## Change in the basic rate of interest to 0.12% with effect from 1 July 2009

The Deutsche Bundesbank calculates the basic rate of interest pursuant to section 247 (1) of the German Civil Code (*Bürgerliches Gesetzbuch*) and publishes its effective level in the Federal Gazette (*Bundesanzeiger*) pursuant to section 247 (2) of the German Civil Code.

The basic rate of interest as laid down by the German Civil Code serves primarily as a basis for calculating default interest (section 288 (1) sentence 2 of the German Civil Code). It changes on 1 January and 1 July each year by the percentage points by which the reference rate has risen or fallen since the last change in the basic rate of interest. The reference rate is the interest rate for the most recent main refinancing operation of the European Central Bank prior to the first calendar day of the six-month period concerned.

The fixed interest rate for the most recent main refinancing operation of the European Central Bank on 30 June 2009 was 1.00%. Since 1 January 2009, the relevant date for the last change in the basic interest rate, the interest rate for the main refinancing operation has fallen by 1.50 percentage points (the fixed interest rate for the last main refinancing operation in December 2008 stood at 2.50%).

Beginning on 1 July 2009, this amounts to a basic rate of interest of 0.12% pursuant to the German Civil Code (down from 1.62%).

The new basic rate of interest will be announced in the 2 July 2009 (No 95) issue of the Federal Gazette.

Deutsche Bundesbank | Communications Departement | Wilhelm-Epstein-Strasse 14 | 60431 Frankfurt am Main | Germany
www.bundesbank.de | E-Mail: presse-information@bundesbank.de
Tel: +49 69 9566 3511/3512 | Fax: +49 69 9566 3077
**Reproduction permitted only if source is stated.**

EXHIBIT 4



print page

## Arbitration Rules of the German Maritime Arbitration Association

Hamburg / Bremen
2007 Edition
in force as from 1st January 2007

## Index

§ 1  Scope of Application

§ 2  Choice of Arbitrators

§ 3  Number of Arbitrators

§ 4  Appointment of Arbitrators

§ 5  Duties of the Arbitrators

§ 6  Challenging an Arbitrator

§ 7  Costs

§ 8  Place of Arbitration, Registration of the Proceedings

§ 9  Institution of Proceeding

§ 10  Procedural Principles

§ 11 Arbitral Proceedings

§ 12 Applicable Law

§ 13  Arbitral Settlement

§ 14 Award

§ 15  Services and Competent State Court

### § 7 Costs

1. The arbitral tribunal is entitled to remuneration (fees, reimbursement of expenses and value added tax) for which the parties are jointly and severally liable.

2. In respect of such remuneration, the GMAA Rules on the Remuneration of the Arbitral Tribunal shall apply. They shall be considered part of these Arbitration Rules. At the request of the tribunal, advance payments shall be made, each party paying half.

3. Upon a party's application, it shall lie within the arbitral tribunal's reasonable discretion whether to order a foreign claimant or counterclaimant to provide security for costs in the proceedings.

4. Each party shall, to the extent they are unsuccessful, bear the remuneration of the arbitrators as well as costs and expenses incurred by arbitrators and shall reimburse the other party in respect of his costs and expenses, provided that such costs and expenses were necessary in order to appropriately pursue or defend the claim. Fees of a representative appearing on behalf of a party in the proceedings shall only be recoverable up to the amount fixed in the Law on the Remuneration of Lawyers (RVG) in respect of appellate proceedings.

EXHIBIT 5

# GERMAN MARITIME ARBITRATION ASSOCIATION
## VEREINIGUNG FÜR DEUTSCHE SEESCHIEDSGERICHTSBARKEIT

## GMAA-Rules on The Remuneration of The Arbitral Tribunal
Edition 2 - 2002 as adopted in the Members' Meeting on November 20, 2002

## § 1 Remuneration of Arbitrators

1. Each arbitrator shall receive a fee for his services in accordance with § 4 hereof.

2. When an order to take evidence is issued in the course of the arbitral proceedings, each arbitrator
shall receive an additional non-recurring fee amounting to 50% of the fee under § 4 hereof.

3. Necessary expenses and the value added tax incurred shall be reimbursed to the arbitrators together with the payment of the fees according to subparas 1 and 2 above.

4. An arbitrator who was only appointed but has not become active is not entitled to a fee. Should the arbitral proceedings be terminated prior to the first hearing, the arbitral tribunal is entitled to reduce the fees according to its reasonable discretion.

## § 2 Maturity

The fee according to § 1 subpara 1 becomes due with the constitution of the arbitral tribunal. The fee according to § 1 subpara 2 becomes due when the relevant order is issued.

## § 3 Value of the Matter in Dispute

1. The arbitral tribunal shall assess the value of the matter in dispute in accordance with the principles laid down in the Gerichtskostengesetz (Statue of Court Fees).

2. The minimum value of the matter in dispute amounts to EUR 10,000.-

## § 4 Fees (VAT excluded)

| 1. | Value in dispute | | Fee | |
|---|---|---|---|---|
| | EUR | 10.000.- | EUR | 1,300.- |
| | EUR | 13.000.- | EUR | 1,400.- |
| | EUR | 16.000.- | EUR | 1,500.- |

| | | | |
|---|---|---|---|
| EUR | 19.000.- | EUR | 1,600.- |
| EUR | 22.000.- | EUR | 1,700.- |
| EUR | 25.000.- | EUR | 1,800.- |
| EUR | 30.000.- | EUR | 2,000.- |
| EUR | 35.000.- | EUR | 2,200.- |
| EUR | 40.000.- | EUR | 2,400.- |
| EUR | 45.000.- | EUR | 2,600.- |
| EUR | 50.000.- | EUR | 2,800.- |
| EUR | 65.000.- | EUR | 3,000.- |
| EUR | 80.000.- | EUR | 3,200.- |
| EUR | 95.000.- | EUR | 3,400.- |
| EUR | 110.000.- | EUR | 3,600.- |
| EUR | 125.000.- | EUR | 3,800.- |
| EUR | 140.000.- | EUR | 4,000.- |
| EUR | 155.000.- | EUR | 4,200.- |
| EUR | 170.000.- | EUR | 4,400.- |
| EUR | 185.000.- | EUR | 4,600.- |
| EUR | 200.000.- | EUR | 4,800.- |
| EUR | 230.000.- | EUR | 5,000.- |
| EUR | 260.000.- | EUR | 5,500.- |
| EUR | 290.000.- | EUR | 6,000.- |
| EUR | 320.000.- | EUR | 6,500.- |
| EUR | 350.000.- | EUR | 7,000.- |
| EUR | 380.000.- | EUR | 7,500.- |
| EUR | 410.000.- | EUR | 8,000.- |
| EUR | 440.000.- | EUR | 8,500.- |
| EUR | 470.000.- | EUR | 9,000.- |
| EUR | 500.000.- | EUR | 9,500.- |

2. In cases where the value in dispute exceeds EUR 5,000, the arbitrator fees shall be increased by EUR 300 for each commenced EUR 50,000 beyond EUR 500,000 and up to an amount is dispute of EUR 5,000,000 and thereafter by EUR 200 for each additional commenced EUR 50,000.

3. The amounts in dispute shall be rounded up.

EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TOSMARE SHIPYARD JSC/ AS TOSMARES
KUGUBUVETAVA,

                     Plaintiff,          09 CV

-v-

                                        **ATTORNEY'S DECLARATION**
FOX SHIPPING LTD.,                      **THAT DEFENDANT CANNOT BE**
                                        **FOUND IN THE DISTRICT**

                    Defendant.
------------------------------------------------------------------x

      This declaration is executed by **George M. Chalos, Esq.**, counsel for the Plaintiff,

TOSMARE SHIPYARD JSC/ AS TOSMARES in order to secure the issuance of a Summons

and Process of Maritime Attachment and Garnishment in the above-entitled, in personam,

Admiralty cause.

      Pursuant to 28 U.S.C. §1746, **George M. Chalos, Esq.**, declares under the penalty of

perjury:

      I am a Member of the firm of CHALOS & CO, P.C., attorneys for Plaintiff in the above

referenced matter.

      I am familiar with the circumstances of the Verified Complaint, and I submit this

declaration in support of Plaintiff's request for the issuance of Process of Maritime Attachment

and Garnishment of the property of the defendant, FOX SHIPPING LTD., pursuant to Rule B of

the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure.

      I have personally inquired or have directed inquiries into the presence of the defendant in

this District.

I have personally checked with the office of the Secretary of State of the State of New York, using the Secretary of State's Division of Corporations database, and I have determined that, as of September 14, 2009, the defendant is not incorporated pursuant to the laws of New York, and have not nominated any agent for the service of process within the Southern District of New York.

I have inquired of Verizon Telephone Company whether the defendant can be located within this District. The Verizon Telephone Company has advised me that the defendant does not have any telephone number listings within this District.

I have further consulted with several other telephone directories on the internet, and I have found no separate telephone listings or addresses for the defendant within this District.

I have engaged in a Google search as to whether the defendant can be located within this District. The Google search results did not provide any information that defendant is found in this District.

I am unaware of any general or managing agent(s) within this District for the defendant.

In that I have been able to determine that the defendant has not appointed an agent for service of process within the Southern District of New York and that I have found no indication that the defendant can be found within this District for the purposes of Rule B, I have formed a good faith belief that the defendant does not have sufficient contacts or business activities within this District and does not have any offices or agents within this District to defeat maritime attachment under Rule B of the Supplemental Rules for Admiralty and Maritime Claims as set forth in the Federal Rules of Civil Procedure.

It is my belief, based upon my own investigation that the defendant, FOX SHIPPING LTD., cannot be found within this District for the purposes of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

Dated: Oyster Bay, New York
       September 14, 2009

                              CHALOS & CO, P.C.
                              Attorneys for Plaintiff
                              TOSMARE SHIPYARD JSC/ AS
                              TOSMARES KUGUBUVEETAVA

                     By:      _____
                              George M. Chalos (GC-8693)
                              123 South Street
                              Oyster Bay, New York 11771
                              Tel: (516) 714-4300
                              Fax: (866) 702-4577
                              Email: gmc@chaloslaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TOSMARE SHIPYARD JSC/ AS TOSMARE
KUGUBUVETAVA,

                            Plaintiff,                09 CV

-v-

                                                   **VERIFICATION OF**
FOX SHIPPING LTD.,                              **COMPLAINT**
                                Defendant.
----------------------------------------------------------------x

       Pursuant to 28 U.S.C. §1746, GEORGE M. CHALOS, Esq., declares under the penalty of perjury:

       1.      I am a Member of the law firm of CHALOS & CO., P.C., counsel for the

Plaintiff, TOSMARE SHIPYARD JSC/ AS TOSMARE KUGUBUVETAVA, herein;

       2.      I have read the foregoing Verified Complaint and know the contents thereof; and

       3.      I believe the matters to be true based on documents and information obtained

from employees and representatives of the Plaintiff through its agents, underwriters and attorneys.

       4.      The reason that this verification was made by deponent and not by the Plaintiff is

because Plaintiff is a foreign corporation, whose officers are not in this district, and whose

verification cannot be obtained within the time constraints presented by the circumstances of this

case.

       I declare under penalty of perjury that the foregoing is true and correct.

Dated:  Oyster Bay, New York
          September 14, 2009

                                     CHALOS & CO., P.C.
                                     Attorneys for Plaintiff
                                     TOSMARE SHIPYARD JSC/ AS
                                     TOSMARES KUGUBUVETAVA

                         By:       _____
                                     George M. Chalos (GC-8693)
                                     123 South Street
                                     Oyster Bay, New York 11771
                                     Tel: (516) 714-4300
                                     Fax: (866) 702-4577
                                     Email: gmc@chaloslaw.com